A89A0081. McCOUNLY v. THE STATE.
(381 SE2d 552)

BEASLEY, Judge.

Defendant appeals his convictions of burglary (OCGA § 16-7-1) and robbery (OCGA § 16-8-40 (a)).

1. At approximately 12:30 a.m. on January 19, 1988, Mr. and Mrs. Camp, both elderly, were awakened by a knock on their front door. Mr. Camp responded and encountered a tall black man with a moustache, wearing a peacoat and a ball cap. The man asked him to call the fire department because there was a fire down the street. The one-hundred-watt porch light was on and the man was standing under the light about two feet from the door.

When Mr. Camp went to a back window to see the fire, his wife turned on the light in the living room and began to call the emergency number. The man kicked in the door and grabbed her by the back of her gown, turned off the living room light and demanded money. He held her through the incident and he smelled of liquor. Both Mr. and Mrs. Camp were threatened. Mr. Camp gave the man paper money from his wallet. He did not know the denominations but had had forty dollars before he ran some errands. Mrs. Camp had no money in her purse. She showed the man loose change in a soap dish. He took the soap dish, the money, and a flashlight which bore Mr. Camp's initials scratched onto it.

The man left and the Camps called the police who responded at 12:45 a.m. They were given the above description and it was broad-

cast over the radio. Based on the description, the officers suspected defendant whom they knew. About eight to ten minutes later, Officer Porter, who had been canvassing the neighborhood, spotted defendant walking about 500 feet from the victims' house. Defendant lived in the neighborhood.

Porter stopped defendant and told him he was suspected of the theft. After patting him down for weapons, Porter took defendant to the victims' house, told Mr. Camp he believed he had the man, and asked Mr. Camp to look. Mr. Camp went to the car, looked through the window, and identified defendant. Mr. Camp had seen the assailant in the neighborhood several times before.

Defendant was taken to the station and charged. He was searched and $7.40 in loose change was found in the front pocket of his peacoat. He had no other money on him. The patrol car, which had been searched at the beginning of the shift, including removing the bottom rear seat, was searched again, and a twenty and three ones were found stuck between the bottom and back of the rear seat. No one else had been in the back seat that day.

Pursuant to search warrant, defendant's home was searched at 4:30 a.m. The door was unlocked and no one was there when the officers arrived. Inside a wood burning stove in the living room were the soap dish and the flashlight, partially burned.

The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant filed a motion to suppress evidence of the showup as well as any in-court identification of defendant, contending that he was deprived of his "right to counsel and due process at said showup." While no specific authority was cited below, the cases relied on here deal with the Federal Constitutional rights and that is all we will consider.

The right to counsel attaches only at or after formal adversary proceedings which had not commenced when the showup occurred. *Moore v. Illinois*, 434 U. S. 220, 231 (98 SC 458, 54 LE2d 424) (1977); *Gilbert v. California*, 388 U. S. 263 (87 SC 1951, 18 LE2d 1178) (1967). Thus, there was no Sixth Amendment violation.

The trial court ruled that, under the totality of circumstances, *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), the showup was reasonably and fairly conducted at the location of the offense and near in time to the offense.

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, supra

at 199; *Wright v. State*, 166 Ga. App. 295, 297 (1) (304 SE2d 105) (1983).

Although Mr. Camp had been blind in one eye since childhood, he gave a description accurate enough for the officers to tentatively identify a suspect, who was then found in the immediate vicinity of the crime. Mr. Camp had observed the assailant under a light and had been able to see him during the entire altercation, although Mrs. Camp had not. Defendant smelled of liquor as had the assailant; he was wearing clothes as described; and although Mr. Camp did not know his name, he had seen the man in the neighborhood before. The chance of misidentification under these circumstances was not substantial and it was not error to admit the identifications. *Jones v. State*, 184 Ga. App. 654, 655 (362 SE2d 457) (1987); *Wolke v. State*, 181 Ga. App. 635, 636 (1) (353 SE2d 827) (1987); *Boswell v. State*, 178 Ga. App. 250, 251 (2) (342 SE2d 744) (1986); *Wright*, supra.

3. Defendant complains of the seating of a juror, who he contends had expressed a bias. The juror stated during voir dire that he had heard testimony (during a first trial which ended in a hung jury) and that he had formed some opinion. After this exchange, however, counsel for defendant stated that he would accept the juror. No challenge for cause was made to the juror, OCGA § 15-12-164, and defendant may not now complain of his having been seated. This court will not consider objections raised for the first time on appeal, nor will it allow a defendant to complain of self-induced error. *Tolbert v. State*, 180 Ga. App. 703, 704 (3) (350 SE2d 51) (1986); *Farmer v. State*, 180 Ga. App. 720, 722 (5) (350 SE2d 583) (1986).

4. After the jury had deliberated for nearly two-and-a-half hours, it reported that there was no consensus after three votes. The court then sua sponte gave the modified so-called *"Allen* charge" [*Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896)], of which defendant now complains. After the charge was given, the court inquired of any exceptions and counsel for defendant stated that he had none.

"Because appellant stated that he had no exceptions when the court made inquiry, he waived his right to raise the issue on appeal. *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980). While it is true that this court shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether or not objection was made (OCGA § 5-5-24 (c)), appellant has not shown that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. [Cits.]" *Maynard v. State*, 171 Ga. App. 605, 606 (2) (320 SE2d 806) (1984). The charge here complained of is not such a charge. *Sanders v. State*, 257 Ga. 239, 243 (7) (357 SE2d 66) (1987);

*Short v. State*, 256 Ga. 172, 174 (5) (345 SE2d 344) (1986). It was substantially the same as that found in the Council of Superior Court Judges' Suggested Pattern Jury Instructions, Vol. II, Criminal (1984). See *Barnes v. State*, 184 Ga. App. 513, 514 (4) (361 SE2d 876) (1987).

5. Defendant complains of the trial court's denial of his motion for a mistrial made during the direct testimony of Officer Porter. The officer said he knew defendant "from previous contacts with him." At the time the statement was made, there was no objection. Later, reflected by 14 pages in the transcript, defendant moved for a mistrial, contending that the statement placed his character in issue. "[A] motion for mistrial which is not made at the time the questions objected to are answered is not timely and will be considered as waived because of the delay in making it. [Cits.]" *Dye v. State*, 177 Ga. App. 824, 825 (341 SE2d 314) (1986); *Boscaino v. State*, 186 Ga. App. 133, 134 (3) (366 SE2d 789) (1988); *Whittington v. State*, 184 Ga. App. 282, 285 (3) (361 SE2d 211) (1987).

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 6, 1989.

*George R. Asinc, Gary N. Struletz*, for appellant.
*Thomas J. Charron, District Attorney, Frank R. Cox, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys*, for appellee.