302 Ga. 118
FINAL COPY

S17A1101. MILLER v. THE STATE.

BLACKWELL, Justice.

Michael York Miller was tried by a Muscogee County jury and convicted of murder and other crimes in connection with the shooting death of Shawnita Nicole Campbell.[1] Miller appeals, contending that an error in the poll of the jury requires that his convictions be set aside, and asserting that his prosecution for the crimes of which he was convicted other than murder was barred by the statute of limitation. Finding no reversible error, we affirm.

---

[1] On July 31, 2012, a Muscogee County grand jury indicted Miller, charging him with malice murder, felony murder predicated on possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony (murder), possession of a firearm by a convicted felon, and two counts of threatening a witness. His trial began on May 20, 2014, and the jury returned its verdict three days later, finding Miller guilty on all counts. The trial court initially sentenced Miller to life imprisonment without parole for malice murder, a consecutive term of imprisonment for five years for possession of a firearm during the commission of a felony, and a concurrent term of imprisonment for five years for one count of threatening a witness. The felon-in-possession count and the other count of threatening a witness were dead-docketed. The felony murder was vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). Miller moved for a new trial on June 9, 2014, and he amended the motion on December 11, 2015. The trial court denied the motion on June 27, 2016, after a hearing, but resentenced Miller to life with the possibility of parole on the murder count. Miller timely appealed, and this case was docketed to the April 2017 term of this Court and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence at trial shows that, late in the evening of April 11, 1999, Miller shot and killed Campbell with a .25 caliber pistol near a house known as the "Dog Pound" in Columbus. After Campbell's body was discovered the next day, investigators could not find any witnesses willing to come forward, and the case went cold. Then, in 2010, a detective located two witnesses, Angela Lyles and Tuiquana Dowdell, who had previously frequented the Dog Pound and knew the victim.

Dowdell testified that on the day of the shooting, she and a friend, Lavasco Armour, were sitting on the porch of the Dog Pound when Miller approached them, looking "mad," and asked Dowdell if she had "seen that b***h [Campbell]." Miller told Dowdell: "When you see [Campbell], tell that b***h I'm looking for her. I got something for her." Sometime later, Dowdell watched as Campbell and Miller got into an argument in front of the house, walked off together, and sat in a car a few houses up the street. Shortly afterward, Dowdell heard a gunshot coming from the car. Later that night, Miller approached Dowdell and Armour, and said, "[y]ou better not say nothing." At the time Miller said this, he was carrying a small black bag that Dowdell believed contained a firearm, as she had seen him pull a firearm from

2

the bag on previous occasions. Dowdell testified that Miller's statement made her feel scared and that Armour also looked afraid. (Armour died before trial.)

Lyles testified, among other things, that she saw Miller and Campbell arguing in a car near the Dog Pound on the day of the shooting. She then heard a "weird noise like gurgling" coming from the car, saw a light flick, and heard a sound like a firecracker. The car then drove past Lyles, driven by an unidentified individual, with Miller and Campbell in the back seat. Campbell appeared to be having a seizure. Lyles ran away in fear, hiding out at a friend's house overnight and eventually moving to Texas so she could not be found. Lyles testified that Miller had thrown bleach in her face before, that he has a "bad attitude," and that if he thinks "you owe him something," even if it's a dollar, "he will hurt you for that dollar. He'll go off on you." Lyles also testified that Miller carried a gun in a small black bag and used it to intimidate people. Other evidence showed that Miller had a prior conviction in 1988 stemming from pointing a Raven Arms .25 caliber pistol at another. Forensics matched the manufacturer and caliber of the gun that killed Campbell with the gun used by Miller in the prior offense.

Miller does not dispute that the evidence was sufficient to sustain his convictions. Nevertheless, as is our customary practice in murder cases, we independently have reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Miller was guilty of malice murder and the other offenses for which he was ultimately convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Miller argues that an error in the poll of the jury entitles him to a new trial. After the jury returned the verdict, at Miller's request, the trial court polled the jurors one by one, asking them whether the verdict was theirs in the jury room, whether the verdict was freely and voluntarily made, and whether it was still their verdict. Each of the jurors so polled answered in the affirmative, but the trial court inadvertently failed to poll one of the twelve jurors.

Relying on our decision in Benefield v. State, 278 Ga. 464, 466 (602 SE2d 631) (2004), Miller contends that the trial court's failure to poll the juror, without taking any corrective action, requires automatic reversal because the

4

incomplete jury poll indicated that the verdict was not unanimous.[2] But Miller's reliance on <u>Benefield</u> is misplaced. In that case, a juror answered "no" when asked during the jury poll if he had voted for the guilty verdict. See <u>Benefield</u>, 278 Ga. at 466. Although the defendant did not contemporaneously object to the verdict, we held that the juror's negative response showed a non-unanimous verdict, which required the trial court sua sponte to send the jury back for further deliberations. See id. In this case, however, there is no indication at all that the jury failed to reach a unanimous verdict or that any juror's guilty verdict was improperly obtained. There was no negative answer to a jury poll question. Thus, there are no grounds for reversal. See <u>Hunter v. State</u>, 177 Ga. App. 326, 327 (2) (339 SE2d 381) (1985) (finding no reversible error where one juror was inadvertently omitted during the polling, without objection from the defendant).

---

[2] Miller concedes that he did not contemporaneously object to the incomplete jury poll, but, he argues, this issue should be reviewed for plain error. We disagree. Our plain-error review is limited to only certain types of errors, namely, (1) alleged errors in the sentencing phase of a death penalty trial; (2) certain improper comments by the trial judge in violation of OCGA § 17-8-57; (3) errors in jury instructions; and (4) evidentiary errors in trials occurring after January 1, 2013. See <u>Williams v. State</u>, 291 Ga. 501, 505 (2) (732 SE2d 47) (2012); <u>Durham v. State</u>, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). Thus, any errors relating to polling the jury are waived if not timely brought to the trial court's attention. See <u>Tucker v. State</u>, 252 Ga. 263, 263 (349 SE2d 172) (1984) ("We need not decide whether [alleged errors in polling the jury] deprived [defendant] of any right, procedural or substantive, because [defendant] imposed no objection to any aspect of the jury poll.").

3. Miller contends that the statute of limitation barred his prosecution for possession of a firearm during the commission of a felony and threatening a witness. But Miller did not assert a statute-of-limitation defense below, and the trial court did not rule on it; therefore, this issue is not preserved for appellate review. See Humphrey v. State, 299 Ga. 197, 199 (2) (787 SE2d 169) (2016); Barnes v. State, 291 Ga. 831, 833 n.2 (732 SE2d 752) (2012).

Judgment affirmed. All the Justices concur.

Decided September 13, 2017.

Murder. Muscogee Superior Court. Before Judge Rumer.

David J. Walker, for appellant.

Julia F. Slater, District Attorney, Matthew J. Landreau, Jennifer E. Dunlap, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.